## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEW MEXICO

_____

ADAM LOWTHER and JESSICA LOWTHER
on behalf of themselves and as next friends
to their minor children, W.L and A.L.,

      Plaintiffs,

vs.                                                                Case No. 1:18-cv-00868 KWR/JFR

CHILDREN YOUTH AND FAMILIES DEPARTMENT,
BERNALILLO COUNTY SHERIFF'S DEPARTMENT,
MARIA MORALES, in her personal capacity acting under
color of state law, JACOB WOOTTON, in his personal
capacity acting under color of state law, CATHERINE SMALLS,
in her personal capacity acting under color of state law,
BRIAN THORNTON, in his personal capacity acting under color
of state law, and MARTIN LOZANO, in his personal capacity
acting under color of state law,

      Defendants.

## MEMORANDUM OPINION AND ORDER

THIS MATTER comes before the Court upon Plaintiffs' Motion for Reconsideration filed

on June 24, 2020 (**Doc. 180**)**,** as well Defendants' Motion to Alter Judgment (**Doc. 183**), filed

July 1, 2020, with respect to certain rulings by the Court in its June 3, 2020 Memorandum and

Opinion Order. **Doc. 174.** Having reviewed the parties' pleadings and the applicable law, the Court

finds that Plaintiffs' motion it not well-taken, and, therefore is DENIED. Defendants' motion is

well-taken in part and, therefore, is GRANTED in part and DENIED in part.

## BACKGROUND

This case arises from an investigation of alleged child abuse at Plaintiffs' home.  Plaintiffs

claim that Defendants violated their First, Fourth, and Fourteenth Amendment rights, and the New

Mexico Tort Claims Act (NMTCA), by *inter alia*, unlawfully arresting or detaining Dr. Adam Lowther (Dr. Lowther); entering the Lowther residence without a warrant; detaining Jessica Lowther (Mrs. Lowther); and removing the Lowther children (A.L. and W.L.).

Plaintiffs filed this case under 42 U.S.C. § 1983 and the New Mexico Tort Claims Act, alleging the following claims against the Defendants[1]:

Count I:  Fourth Amendment (Unlawful Seizure and Arrest of Dr. Lowther) (Defendants Wootton, Small, Thornton, and Lozano);

Count II:  Fourth Amendment (in the alternative to Count I) (Unlawful Detention of Dr. Lowther) (Defendants Wootton, Small, Thornton, and Lozano);

Count III:  Fourth Amendment (Unlawful Detention of Mrs. Lowther) (Defendants Wootton, Small, Thornton, and Lozano);

Count IV:  Fourth Amendment (Unlawful Entry into the Lowther Home) (Defendants CYFD, Morales, Wootton, Small, Thornton, and Lozano);

Count V: Fourth and Fourteenth Amendments (Illegal Seizure of the Lowther Children) (Defendants CYFD, Morales, and Wootton);

Count VI:  Fourth and Fourteenth Amendments (Illegal Seizure of the Lowther Children) (Defendants CYFD, Morales, and Miles);

Count VII: Fourth and Fourteenth Amendments (Illegal Arrest, Entry, and Seizures) (Defendant BSCO);

Count VIII: Fourth and Fourteenth Amendments (Illegal Seizure of the Lowther Children) (Defendant CYFD);

Count IX: First Amendment (Retaliation against Mrs. Lowther) (Defendant Wootton);

Count X: NMTCA (False Arrest and Imprisonment of Dr. Lowther) (Defendant BSCO);

Count XI: NMTCA (False Arrest and Imprisonment of Mrs. Lowther) (Defendant BSCO);

Count XII: NMTCA (False Arrest and Imprisonment of the Lowther children) (Defendant BSCO);

Count XIII: NMTCA (Defamation of Dr. Lowther) (Defendant BSCO).

---

[1] The following reflects the claims as provided in Plaintiffs' Amended Complaint, Doc. 166, filed April 22, 2020.

The Memorandum subject to reconsideration (**Doc. 174**) addressed Defendants' Bernalillo County Sheriff's Department (BCSO), Detective Jacob Wootton (Wootton), Deputies Catherine Small (Small)[2], Brian Thornton (Thornton), and Martin Lozano (Lozano) (collectively "County Defendants") motion for partial summary judgment on Plaintiffs' claims under Counts III, IV, V, VI, VII, IX, X, XI, XII, XIII (**Doc. 59**) as well as Plaintiffs' cross-motion for partial summary judgment with respect to Counts I, II, III, IV, V, and VII.[3] **Doc. 81**.[4]  Plaintiffs seek reconsideration of three matters, arguing that the Court misapprehended certain laws and facts by: (1) granting dismissal of the Lowther children's Fourth Amendment unlawful seizure claim (Count V), (2) dismissing Mrs. Lowther's Fourth Amendment unlawful detention claim (Count III), and (3) denying summary judgment on Plaintiffs' unlawful entry claim (Count IV).[5]

County Defendants in turn have moved the Court to alter judgment with respect to decisions rendered by the Court on the following:

> 1) whether emergency circumstances justified entry into the Lowther home given that the Court found emergency circumstances justified removal of A.L. and W.L.;
>
> (2) whether it was clearly established that Deputies were violating Mrs. Lowther's rights when she allowed them into her home and what case put Deputies on notice that such conduct violated her rights or that her conduct was not implied consent;
>
> (3) whether it was clearly established that threatening to detain Mrs. Lowther for violation of Section 30-6-4 for denying access to her children to obtain her consent violated her rights, considering Deputies had at least reasonable suspicion to detain her, and what case put Deputies on notice that such conduct violated her rights;
>
> (4) whether Deputies' actions and reliance of Section 30-6-4 was nonetheless objectively reasonable under the circumstances with respect to Count IV; and

---

[2] The Caption appears to incorrectly name Detective Catherine Small as Catherine Smalls.

[3] Counts I and II were already addressed in a separate Memorandum and Opinion. *See* Doc. 159.

[4] Plaintiffs' Cross Motion for Partial Summary Judgment (Doc. 81) was issued in the same Brief as its Response to Defendants' Motion for Partial Summary Judgment (Doc. 59).

[5] Counts IV and V also advanced claims against additional Defendant CYFD. CYFD has submitted separate motions for the Court's attention and is not subject to Plaintiffs' current motion for reconsideration.

(5) assuming Plaintiffs' facts, whether it was clearly established that Detective Wootton violated Mrs. Lowther's First Amendment rights by removing A.L. and W.L. after she asked to speak to an attorney given that the Court found his removal of her children was constitutional.

**Doc. 183 at 3.**

## LEGAL STANDARD

"The Federal Rules do not specifically mention motions to reconsider interlocutory orders." *Kruskal v. Martinez*, 429 F. Supp. 3d 1012, 1023 (D.N.M. 2019). The Court will use the same test that it has developed for motions to reconsider as set forth in *Anderson Living Trust v. WPX Energy Prod., LLC* (312 F.R.D. 620, 642–49 (D.N.M. 2015)(Browning, J.)) and subsequent caselaw.

The Tenth Circuit has not cabined district courts' discretion beyond what rule 54(b) provides: "[D]istrict courts generally remain free to reconsider their earlier interlocutory orders." Been v. O.K. Indus., 495 F.3d 1217, 1225 (10th Cir. 2007). In the Tenth Circuit, "law of the case doctrine has no bearing on the revisiting of interlocutory orders, even when a case has been reassigned from one judge to another." Rimbert v. Eli Lilly & Co., 647 F.3d 1247, 1252 (10th Cir. 2011)(emphasis added)(citing Been v. O.K. Indus., Inc., 495 F.3d at 1225). In this context, "the doctrine is merely a 'presumption, one whose strength varies with the circumstances.' " Been v. O.K. Indus., Inc., 495 F.3d at 1225 (quoting Avitia v. Metro. Club of Chi., Inc., 49 F.3d 1219, 1227 (7th Cir. 1995)). "In short, a district court can select the standard of review for a motion to reconsider an interlocutory order. It can review the earlier ruling de novo and essentially reanalyze the earlier motion from scratch, it can review the ruling de novo but limit its review, it can require parties to establish one of the law-of-the-case grounds, or it can refuse to entertain motions to reconsider altogether." *Kruskal v. Martinez*, 429 F. Supp. 3d at 1024.

### **Qualified Immunity Standard**

4

County Defendants asserted the defense of qualified immunity, which shields government officials from liability for civil damages "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009); *Romero v. Story*, 672 F.3d 880 (10th Cir. 2012).

When a defendant moves for summary judgment on the basis of qualified immunity, the plaintiff bears a heavy two-fold burden. *Medina v. Cram*, 252 F.3d 1124, 1128 (10th Cir. 2001). The plaintiff must put forward evidence showing (1) that the defendant violated plaintiff's constitutional rights, and (2) the right at issue was clearly established at the time of the violation. *Id*. If the plaintiff fails to establish either part of the two-part inquiry, the court must grant the defendants qualified immunity. *Id.* If the plaintiff meets his or her burden of coming forward with facts or allegations which would demonstrate that the defendant's alleged violation should have been apparent in light of preexisting law, then the defendant assumes the normal summary judgment burden of establishing that no material facts remain in dispute that would defeat its claim of qualified immunity. *See Woodward v. City of Worland*, 977 F.2d 1392, 1396-97 (10th Cir. 1992). In determining whether summary judgment is appropriate, the Court considers the facts and all reasonable inferences drawn therefrom in a light most favorable to the nonmoving party. *Hollander v. Sandoz Pharmaceuticals Corp.*, 289 F.3d 1193, 1214 (10th Cir. 2002).

## UNDISPUTED MATERIAL FACTS[6]

In 2017, the Lowther household had two children, A.L. and W.L., ages four and seven respectively. In August 2017, A.L. enrolled in Calvary Christian Academy. A.L.'s kindergarten teacher was Betty DuBoise (DuBoise). A.L. attended the school for approximately two weeks. On

---

[6] The Court has taken the underlying facts concerning the instant matter from its prior Memorandum Opinion and Orders filed in this action. References to supporting exhibits are included in the briefs and for ease of reading, are omitted here.

different occasions, DuBoise informed A.L.'s parents, Dr. and Mrs. Lowther, of inappropriate behavior A.L. had exhibited at school, including touching her private parts and hiking up her dress. Both parents acknowledged that A.L. was having issues which they were trying to address.

On August 30, 2017, at approximately 2:28 p.m., DuBoise anonymously called The New Mexico Children, Youth and Families Department (CYFD) and informed CYFD of her suspicion that A.L. was being sexually abused by Dr. Lowther. CYFD's intake report highlighted the information DuBoise disclosed regarding A.L.'s behavior and what she had told DuBoise, which formed the basis of DuBoise's concerns. In the pertinent part, the report states:

> On 8.25.2017 Source spoke with Adam about behaviors that [A.L.] had been displaying in class. [A.L.] has been touching her private area and hiking up her dress. Adam stated that they have been working with her and that she gets it from watching her 7 year old brother touch himself while sucking his thumb.
> On 8.29.2017 Source spoke with Jessica about the behaviors [A.L.] has been displaying. Jessica stated that [A.L.] has been having a hard time and that she would talk with her….
> On 8.30.2017 [A.L.] told a male student that he had a penis. Source redirected the children. Source asked [A.L.] how she knew the word. [A.L.] says Adam puts her on his lap when he goes to the bathroom and likes to move her up and down like a horsey. Adam sleeps with her and kisses her on the lips with tongue. Adam touches her on her bottom and puts his finger inside of her. She was able to demonstrate the movement with her hands and fingers. [A.L.] relayed that her brother kisses her with tongue and that her brother touches her as well. [A.L.] said Adam also touches her brother but did not give any detail. [A.L.] stated that this happens all the time. Source asked [A.L.] if she had told Jessica. [A.L.] said Adam told her not to and that it was their secret. Adam told her that Jessica would get mad. Source tried to encourage [A.L.] to speak with Jessica and [A.L.] said Jessica would yell. [A.L] has been demonstrating some behaviors in class since the start of school. She is not listening, talking back, she spit at another girl and has been aggressive toward other children.

At 3:45 p.m. on the same day, CYFD investigator Maria Morales (Morales) contacted DuBoise to confirm the contents of the intake report. Plaintiffs dispute this fact, claiming that due to the Court ordered stay on discovery they lack sufficient knowledge to admit or deny this

statement.  However, the Court finds this well supported by the record, including portions of which Plaintiffs stated are "incontrovertible" for the purposes of their summary judgment cross motion[7].

**<u>County Defendants' Initial Contact with the Lowther Household</u>**

On August 30, 2017, at approximately 3:41 p.m., Morales contacted BSCO to request assistance in conducting a welfare check of the Lowther children.  Around 3:50 p.m., BSCO dispatched Deputies Small, Thornton, and Lozano to the Lowther residence, with Small as the lead field deputy.  The officers arrived at the Lowther home around 4:05 p.m., where they met Morales and were provided with more detail regarding the nature of the allegations[8].

The deputies knocked on the door and initiated contact with Mrs. Lowther at approximately 4:19 p.m.  Mrs. Lowther was already on the phone with Dr. Lowther when the police arrived and contemporaneously relayed to him the information she was receiving from the officers.[9]  The officers informed her that they were there to conduct a welfare check on the Lowther children because "somebody called and wanted to remain anonymous that they were worried [about the children]."

Mrs. Lowther told the deputies they were not allowed in the house until her husband arrived.  In response, Thornton told her, "So in State of New Mexico, and we're conducting a check on children, if you deny us access you can be arrested."  Mrs. Lowther continued to relay this information to her husband, stating "I don't know what to do here…I don't understand what is going on." She then informed the officers that her husband was on his way and that they would need to remain outside the house until he arrived. Mrs. Lowther also instructed the children to go

---

[7] Plaintiffs stated that for their summary judgment motion, material facts which are incontrovertible included the sworn statements of Detective Jacob Wootton and CYFD investigator Morales. Morales' sworn statement included that she spoke with DuBoise over the phone after receiving the report.
[8] Plaintiffs claimed the discovery stay prohibited determining whether Morales briefed the officers and to what extent. The Court found this fact well supported by the record for the same reasons advanced previously.
[9] The interaction is captured by the officer's various belt tapes. What follows describes Mrs. Lowther's interactions with the officers prior to her husband's arrival.

to their rooms. The deputies acknowledged that waiting for Dr. Lowther was "fine" but instructed her that she could not close the door, which she again relayed to her husband.

Thornton offered to explain in detail to Mrs. Lowther "what is going on" if she would hang up the phone, but she declined to do so. Thornton responded that in that case he would wait for Dr. Lowther to arrive, but nevertheless did explain in general terms that CYFD received a call from school and had come to the home with the deputies.

### Dr. Lowther's Arrival at the Residence

At approximately 4:41 p.m. Detective Wootton was dispatched to the Lowther residence to lead the investigation. Before arriving, Wootton instructed the officers to detain Dr. Lowther when he reached the home. Dr. Lowther arrived at the residence at 4:42 p.m., where he was met outside the house by Thornton who explained that the deputies were responding to an anonymous call regarding concern for the welfare of the Lowther children. Dr. Lowther was not permitted to enter the residence.

After some discussion between Thornton and Dr. Lowther, Morales spoke with Dr. Lowther, briefly explained that there were allegations of child abuse without indicating against whom, provided him with a Parents' Guide detailing, among other things, the process if the children were to be taken into CYFD custody, Dr. Lowther's rights to file a complaint against her, and told him she would provide more detail once the Detective (Wootton) arrived.

Dr. Lowther informed Thornton that he was "not going to let anybody into the house." Thornton responded, "ok so if that is your choice that is fine, I will have to detain you at that point," explaining that refusing to allow access was obstruction of a child welfare investigation. Thornton indicated he would show Dr. Lowther the relevant law and then placed Dr. Lowther in the back of his patrol car. Thornton then told Dr. Lowther that the complaint was against him

specifically. He also took Dr. Lowther's phones due to concerns that there could be evidence on them and went on to explain that New Mexico Statute 1978 § 30-6-4 (NMSA § 30-6-4) permitted officers to check on children welfare. He later asked Dr. Lowther whether there were any firearms in the home and told him that he appreciated that Dr. Lowther was cooperating.

### The Deputies' Continuing Interaction with Mrs. Lowther

While Dr. Lowther was outside, Small and other deputies continued to speak with Mrs. Lowther at the front door. They explained to her that they were at the home because of "very descriptive" statements A.L. had made to someone at school. They also told Mrs. Lowther that a detective was on the way to the residence. Mrs. Lowther expressed incredulity that this could be happening based on something a four-year-old had said.

Upon Mrs. Lowther's inquiry as to what was happening with her husband, she was told that Dr. Lowther was being detained but was not under arrest. Mrs. Lowther asked what A.L. had said, and one deputy told her that even he did not know. Mrs. Lowther asked, "at what point is the information was going to flow?" The deputies explained that more information would be forthcoming once a child therapist had spoken with A.L. In the ensuing discussion, Mrs. Lowther expressed that A.L. "was not unsafe" at which time a deputy told her that if it was his investigation, she would already be in handcuffs in the back of a police car because she was obstructing the officers' duty to check on the welfare of a child and that she "might want to consider [her] actions." Mrs. Lowther responded that her "duty was to her husband..."[10]

Following this interaction, Small informed Mrs. Lowther twice that medical personnel would check on the children and that she could either allow them access or be detained. Mrs. Lowther asked whether the child therapist had arrived. Thornton explained that A.L. would be

---

[10] The Court notes that Mrs. Lowther was cut off by the officer prior to finishing her statement.

transported to a safehouse to be interviewed. Mrs. Lowther questioned whether that meant the deputies were going to take A.L., to which an officer replied that no decisions had been made, but that eventually A.L. would be interviewed in a safehouse.  At approximately 4:44 p.m., Mrs. Lowther allowed the deputies to enter the home and initiate contact with the children[11].  Medical personnel then conducted a medical check of the children at approximately 5:13 p.m. While the officers were inside with Mrs. Lowther and the children, Mrs. Lowther lied to the officers regarding her knowledge of whether there were any weapons or firearms in the home. She subsequently acknowledged the location of the firearms and agreed not to go near them. Doc. 106-1 Ex. F. Plaintiffs dispute this characterization in their Response Brief (Doc. 122 at 7) to CYFD's Motion for Summary Judgment (Doc. 106), however, the Court finds this blatantly contradicted by the record.[12]

### Handcuffing of Dr. Lowther

While the deputies were speaking with Mrs. Lowther leading up to their entry into the home, Dr. Lowther remained in the patrol car speaking with an officer. He asked why he was not permitted into his own home and was told this was due to the complaint being alleged against him specifically, and because the children were in the home.  He was also told that CYFD was

---

[11] Plaintiffs disputed this fact (UMF 22) claiming Mrs. Lowther's permission was involuntary due to threat of arrest and fear of "being run over" by the officers. Plaintiffs asserted Thornton can be heard in the audio tapes, "aggressively and forcefully walking through the open door past Mrs. Lowther before Mrs. Lowther could respond, verbally or nonverbally..." The Court reviewed the related audio and determined this was not well supported by the record; while it is true that Mrs. Lowther did not verbalize assent or dissent, all that can be heard is a creaking door and the rustling sound of individuals filing through.

[12] In response to the question of whether there were firearms in the home, Mrs. Lowther initially stated that she "did not know" and then confirmed that there were no weapons "to her knowledge."  However, while outside, Dr. Lowther informed an officer that there were firearms in the home and that Mrs. Lowther knew where they were located, which she subsequently acknowledged as discussed in the body of the Memorandum above. *See* Doc. 127-10, Ex. H at 39:07-39:17; 41:13-41:37. Mrs. Lowther also expressed her regret for lying about her knowledge of weapons in her Second Declaration. *See* Doc. 122-2 Ex. 2 ¶ 2(d).

investigating whether the allegations "were true or false."  At that time, Small came outside, asked Dr. Lowther to step out of the patrol car, handcuffed him, and placed him back in the vehicle.

### Detective Wootton's Arrival and Interview of Mrs. Lowther

Detective Wootton arrived at the home around 4:50 p.m.  Upon arrival, he conferred with Morales[13].  A deputy apprised Mrs. Lowther of the detective's arrival and his conferral with Morales, at which time Mrs. Lowther was inside aiding in collecting the children.

Sometime thereafter, Wootton interviewed Mrs. Lowther in the presence of Morales[14]. Wootton first gave her Miranda warnings and asked whether she would be willing to answer his questions. There is a dispute as to whether Mrs. Lowther requested an attorney[15]. She eventually agreed to listen to his questions. He asked her why she had not allowed the officers to enter the home.  Mrs. Lowther told him that she denied the officers entry because she was alone with the children and her husband said "not to let you in." Ex. F Thornton Belt Tape Audio Track 4. Wootton stated that it was his understanding that Mrs. Lowther had been advised that it was a criminal offense to interfere with an investigation regarding child abuse. Ex. F Thornton Belt Tape Audio Track 4.  Mrs. Lowther initially stated she "would not have known" or could not recall, but one of the officers present affirmed that they had told her it was an arrestable offense. Mrs. Lowther responded that she had been waiting to hear from her husband.

Morales next provided Mrs. Lowther with details relating to the alleged abuse of A.L., which included allegations of sexual molestation, sexual abuse, and lack of supervision.  She asked Mrs. Lowther if she had any knowledge why someone might make such an allegation from A.L.'s

---

[13] Wootton's Declaration states that Morales forwarded an email to him with the contents of the CYFD report, and that he was informed by deputies that both Mr. and Mrs. Lowther had been uncooperative.

[14] Officer Thornton was present for at least some of the conversation. It is unclear whether he was there for the duration.

[15] No such request is captured on the belt audio tapes, however, the Court notes that both Morales' affidavit and Mrs. Lowther's First Declaration indicate that an attorney was requested.  Mrs. Lowther's Second Declaration (Doc. 122 Ex. 2 ¶ d) claims that she recalls asking about obtaining attorney advice at some point while BSCO was inside the home, prior to receiving the 48 hour hold document, and that the audio tapes do not reflect this statement.

school.  Mrs. Lowther eventually recalled that A.L.'s teacher had mentioned that A.L. had been "messing with herself" at school, but that she and her husband had tried to get her to stop.  Wootton then informed Mrs. Lowther that because of the nature of the allegations he was removing the children on a 48-hour hold, which would include interviews of both A.L. and W.L. at a safehouse[16]. Deputies also told Mrs. Lowther than a warrant would be served upon her house that night, and that she could not return to the home pending the search.  Small remained onsite to ensure nothing inside was tampered with.

### Wootton's Interaction with Dr. Lowther

After speaking with Mrs. Lowther, Wootton communicated with Dr. Lowther, informing him of the specific nature of the allegations.  He reiterated that Dr. Lowther was being detained but not under arrest.  Dr. Lowther questioned why he was in handcuffs.  Wootton replied, "I have no idea" and upon Dr. Lowther's request directed Thornton to remove them[17].  Dr. Lowther was informed that he would need to remain detained in the back of the patrol car.

### Substance of A.L. and W.L. Safehouse Interviews

Having determined to remove the children on a 48-hour hold, A.L. and W.L. were transported to a Safehouse.  A.L. was forensically interviewed from 6:58 p.m.-7:34 p.m., and again from 7:46 p.m.-8:04 p.m. W.L. was interviewed from 8:10 p.m.-8:50 p.m.[18]

During her interview, A.L. stated, among other things, that she got into trouble for touching her privates at school; she sits on her father's lap while he is defecating; her father touches her "pee-pee" and "gina" in the bathroom, which she repeatedly stated was their "secret"; her father

---

[16] There is some dispute as to whether this was the first time Mrs. Lowther was informed that the children were going to be taken.

[17] Plaintiffs disputed that the handcuffs were removed and claimed Dr. Lowther remained handcuffed in the car for three or four hours. The Court found this unsupported by the record, having reviewed Wootton's Declaration and the relevant belt tape audio, which clearly contradicts this assertion.

[18] The Court has reviewed the contents of the Safehouse Interviews of A.L. and W.L. What follows is a brief recitation of some of the noteworthy portions of the children's interviews.

kisses her "butt-cheeks"; and takes photographs and videos of her "butt and gina," with his phone, sometimes while she is saying "fuck."

W.L. stated that he and his sister are spanked on the bottom with a wooden spoon; sometimes, mostly by his father, they are slapped across the face; he feels nervous around his mother; he does not feel safe around his father; his father "is real mean and I don't like to be around him a lot…because he hurts me a lot;" and that his father sometimes pushes him "hard down on the ground" which causes him to hit the back of his head.

At 8:52 p.m., having viewed the interviews, Wootton directed the deputies to transport Dr. Lowther and Mrs. Lowther to the BSCO station.[19]  Ultimately, Wootton charged Dr. Lowther with criminal sexual penetration of a minor and criminal sexual contact of a minor.  Mrs. Lowther was told she was free to go.

## DISCUSSION

### County Defendants' Removal of the Lowther Children (Count V)

Plaintiffs request the Court reconsider its decision granting summary judgment in favor of County Defendants on the basis of qualified immunity regarding the warrantless removal of the Lowther children. Plaintiffs argue that the Court only conducted its analysis pursuant to the Fourteenth Amendment's reasonable suspicion of an imminent risk of abuse standard, and that it failed to appropriately consider their claims under the Fourth Amendment. **Doc. 180 at 3.** Plaintiffs urge the Court to reconsider its Fourth Amendment claims in accordance with the law advanced in "*Roska ex rel. Roska v. Peterson*, 328 F.3d 1230, 1245 (10th Cir. 2003), *Franz v. Lytle*, 997 F.2d 784, 793 (10th Cir. 1993) and recently affirmed in *Halley* [*v. Huckaby*, 902 F.3d

---

[19] Plaintiffs claim the Lowthers were not transported to the police station until approximately 10:30 p.m. This is blatantly contradicted by the record, including a video recording of Dr. Lowther waiting in the police station with a timestamp of 21:27:58 (9:27 p.m.).

1136 (10th Cir. 2018)]." *Id.*   Plaintiffs state that County Defendants only claimed that Mrs. Lowther voluntarily consented to the entry and did not effectively argue that exigent circumstances existed to justify the warrantless entry.

County Defendants contend that Plaintiffs failed to provide the requisite legal framework for the Court to assess their claim under the Fourth Amendment, that the argument was only raised upon Reply, and that County Defendants therefore did not have an opportunity to respond. **Doc. 195 at 3.** They assert that Plaintiffs' Response and Cross Motion (**Doc. 81**) only stated that "BCSO and Wootton did not have Reasonable Suspicion to Remove the Children from the Home." (**Doc. 81 at 51-57**) and that Plaintiffs failed to cite to apposite caselaw that would put County Defendants on notice that they had violated a clearly established right.   Additionally, County Defendants aver that the same emergency circumstances based on imminent risk of abuse that the Court found justified the warrantless removal of the children under the Fourteenth Amendment applies with equal force to the Fourth Amendment. **Doc. 195 3-4.**

The Court agrees that Plaintiffs failed to adequately set forth the relevant Fourth Amendment standard in their initial motion (Doc. 81), solely advancing a lack of reasonable suspicion argument. Nevertheless, having reviewed the applicable law and the cases the parties cite to, the Court finds that the standard governing Fourth Amendment violations in the context of the warrantless removal of a child closely tracks that of the Fourteenth Amendment such that qualified immunity should be granted. Additionally, the Court agrees with Defendants that the new cases cited to by Plaintiffs in their Motion for Reconsideration in fact support the same conclusion as that reached in the Court's Fourteenth Amendment analysis.

### The Reasonable Suspicion Standard as Articulated under the Fourth Amendment

"The Fourth Amendment protects persons from 'unreasonable ... seizures.' U.S. Const. amend. IV. " 'The key principle of the Fourth Amendment is reasonableness....Depending on the circumstances, a seizure must be supported by an arrest warrant, probable cause, or reasonable suspicion to detain and question an individual.'" " *Halley v. Huckaby*, 902 F.3d 1136, 1145 (10th Cir. 2018), cert. denied, Huckaby v. Halley, 139 S. Ct. 1347, 203 L. Ed. 2d 570 (2019).

Plaintiffs proffer that under the relevant caselaw, particularly *Roska*, "the warrantless seizure of a child from inside his or her home is presumptively unreasonable 'unless an exception to the warrant requirement applies.'" **Doc. 180 at 3.** While this is true, this does not fully capture the analysis in *Roska*, which the Court analyzed in a prior opinion. **Doc. 174 at 22-25**.

### The Halley Case

Both parties cite to the Tenth Circuit's analysis in *Halley* in support of their positions as to the appropriate standard provided by *Roska* and *Gomes v. Wood*, 451 F.3d 1122 (10th Cir.2006). While the events in the instant action took place before *Halley*, the Court finds that the case bolsters County Defendants' position. As both parties relay only portions of the *Halley* Court's decision it is instructive to provide additional context.

In *Halley*, a minor child was seized at school by police officers after the Oklahoma Department of Humans Services (DHS) received an anonymous call expressing concern for the child's safety due to his father's history of drug use and prior arrest record.  *Halley v. Huckaby*, 902 F.3d at 1142. DHS designated the report as a low priority, which allowed for several days to respond to the call. *Id*. Ultimately, officials agreed that the child should be picked up at school and removed to a DHS safe house for an interview. *Id*. Although the child said that he did not want to leave school, he was removed by a police officer and interviewed in a DHS safehouse. *Id*. at 1143. The interview did not yield any evidence of abuse. *Id*. ("Left with only the uncorroborated and

anonymous tip, DHS did not proceed any further."). The plaintiffs subsequently brought suit under 42 U.S.C. § 1983, claiming, in the relevant portion, unlawful seizure of the child without his parents' permission in violation of his Fourth Amendment rights. The district court denied summary judgment on the basis of qualified immunity and the defendants appealed.

In addressing the Fourth Amendment violation, the Tenth Circuit considered the plaintiffs' argument that there was no legal basis for the child's seizure because there was no reasonable ground for suspecting that he was in imminent danger.

### Constitutional Violation

Preliminarily, the Tenth Circuit noted that "The parties agree the Fourth Amendment required the officials in this case to have reasonable suspicion of imminent abuse in order to seize [the child]" *Id.* at 1146. Importantly, in an ensuing footnote, the Court discussed the parties' reliance upon *Gomes*:

> Some of the parties cite to *Gomes v. Wood*, 451 F.3d 1122, 1130 (10th Cir.2006), as the source of this standard, but *Gomes* is not a Fourth Amendment case. In *Gomes*, we held that *procedural due process* (not the Fourth Amendment) requires social workers to have "reasonable suspicion of an immediate threat to the safety of the child" in order to seize a child without judicial authorization. *Id.* at 1130; *see Arredondo v. Locklear*, 462 F.3d 1292, 1298 (10th Cir.2006) (applying this rule). *But even though Gomes did not establish a Fourth Amendment rule, its holding hews close to Fourth Amendment doctrine, and is therefore instructive.*

*Id.* (emphasis added).

Upon review of the record, the Court affirmed denial of qualified immunity because the facts of the case did not support that a reasonable officer could find that the child was in imminent danger. *Id.* at 1145-46.

The Court continued, pointing out factual issues with the case:

> First, the phone call to DHS was anonymous and lacked detail. It is, of course, possible for an anonymous call to support a reasonable suspicion of an imminent threat. But the call here was too vague to do so. The caller did not say that [the

child] was suffering abuse at the hands of his father, or that abuse was likely to happen soon. Instead, the caller only expressed concern because [the child's] father was a drug abuser who had been arrested for possessing drugs and a firearm. This was not enough for a reasonable officer to suspect [the child] was in imminent danger.

*Id*. at 1146.

### Clearly Established Law[20]

On the clearly established prong, the Court held that the relevant defendants failed to demonstrate that their conduct was objectively reasonable. *Id*. at 1151. Notably, the Court provided the caveat that, "Had the officials held an incorrect but objectively reasonable suspicion that [the child] was subject to an imminent threat, qualified immunity would apply. But in the absence of reasonable suspicion, we agree with the district court that a reasonable jury can find [Defendants] violated the Fourth Amendment." *Id*. at 1153.

Unlike *Halley*, in the instant action, as discussed in the Court's prior Memorandum and Opinion, the phone call to CYFD was from A.L.'s teacher, who described in graphic detail alleged sexual misconduct disclosed to her by A.L. implicating Dr. Lowther. A.L. also indicated that her brother touched her and that he was abused by their father as well. **Doc. 174 at 5-6.** The Court further found that, among other things: the Lowthers' own conduct during the interaction with officers and CYFD supported reasonable suspicion (***Id*. at 37-38**); considering the information at his disposal, Wootton had reasonably articulable evidence that A.L. and W.L. had been abused or were in imminent danger justifying removal at that time (***Id*. at 40**); and, at the very least, reasonable officers could disagree as to whether an emergency situation existed warranting removal of the children. ***Id*. at 39-40.** In light of the factual differences between the instant action

---

[20] As Halley was decided after the events of the subject action, it cannot stand for clearly established law. The Court includes this brief discussion for background purposes only.

and *Roska*[21], as well as the *Halley* Court's analysis, the Court concludes that County Defendants are entitled to qualified immunity from Plaintiffs' Fourth Amendment claims.

Additionally, the new cases Plaintiffs cite in their Motion for Reconsideration are inapposite or support County Defendants' position. For example, Plaintiffs refer to *Turner v. Houseman* (268 Fed. Appx. 785 (10th Cir. 2008)), an unpublished Tenth Circuit case[22] which neither analyzed the constitutionality of the removal of a child from the home nor discussed the exigent circumstances exception to a warrantless search and seizure. Plaintiffs also rely upon *Sellars v. Foldy* (2010 WL 11590918, at *3) (D.N.M. Mar. 30, 2010) (quoting *Roska* 328 F.3d at 1240), for the proposition that a warrantless seizure is presumptively unreasonable absent an enumerated exception. **Doc. 180 at 5.** Although this is accurate, *Sellars*' ensuing analysis in fact bolsters County Defendants' position, finding that exigent circumstances may permit warrantless seizures when there is an immediate threat to children. *Id*. at *3 (Providing factors to determine exigent circumstances including: "(1) the officers have an objectively reasonable basis to believe there is an immediate need to protect the lives or safety of themselves or others, and (2) the manner and scope of the search is reasonable …"). Furthermore, *Sellars* specifically distinguished its facts from *Roska* namely because in *Roska* the Circuit Court found insufficient evidence of an immediate threat of harm to the child; the defendants had been aware of the child's situation for "quite some time" yet there was "nothing particularly unusual about [the child's] condition at the time he was removed;" and the child's treating physician counselled against removal. *Id*. at 4-5. ("In the present case, [Defendant] contends that the Children indicated they would be beaten if left

---

[21] The Court differentiated the facts of  Roska from the instant matter. *See* Doc. 174 at 35-37. The Court provides a brief explanation of those differences in the ensuing discussion.

[22] *Turner* therefore cannot be used to demonstrate clearly established law.

in the home and that Father displayed anger and aggression toward the Children when he learned

of their report. The danger had not been known [to Defendant] for some time before the removal.)

In its prior Memorandum and Opinion, this Court reached a substantially similar

conclusion that "the facts of the case at hand differ substantially [from *Roska*]." **Doc. 174 at 35-**

**37.** Plaintiffs have not persuaded the Court otherwise, advancing largely the same arguments as in

their prior motion. Thus, the analysis the Court engaged in previously relating to the Fourteenth

Amendment is effectively applicable to the Fourth. Furthermore, even if a constitutional violation

were shown, Plaintiffs have not articulated how they overcome the Court's granting of qualified

immunity upon holding that officers of reasonable competence could disagree as to whether

emergency circumstances justified removing the Lowther children in light of the information

available to the officers at the time. **Doc. 174 at 39-40**.

The Ninth Circuit has reached a similar conclusion. In *Keates v. Koile* (883 F.3d 1228,

1236–37 (9th Cir. 2018)), the Circuit Court explained the coalescence of the legal standard under

the Fourteenth and Fourth Amendments for removal of children:

> Despite the different constitutional source of the right, we have held that "the same
> legal standard applies in evaluating Fourth and Fourteenth Amendment claims for
> the removal of children." *Wallis*, 202 F.3d at 1137 n.8.
> We have woven these constitutional threads into a discrete constitutional right in
> cases where state officials remove children from parents without consent or due
> process. Our cases hold that the Fourteenth, First, and Fourth Amendments provide
> a guarantee "that parents will not be separated from their children without due
> process of law except in emergencies." *Mabe v. San Bernardino Cty., Dep't of Pub.
> Soc. Servs.*, 237 F.3d 1101, 1107–09 (9th Cir. 2001). Officials may not remove
> children from their parents without a court order unless they have "information at
> the time of the seizure that establishes reasonable cause to believe that the child is
> in imminent danger of serious bodily injury." *Rogers v. County of San Joaquin*, 487
> F.3d 1288, 1294 (9th Cir. 2007) (internal quotation marks omitted). Such
> "reasonable cause" arises, for example, where there is evidence of imminent abuse
> after sufficient investigation.

Consequently, the Court concludes that Plaintiffs have failed to carry their burden and their Motion for Reconsideration as to the seizure of the Lowther children under the Fourth Amendment is denied.

### Plaintiffs' Claim for Unlawful Entry: Exigency and Consent (Count IV)

In its prior Memorandum Opinion and Order, the Court denied qualified immunity relating to Plaintiffs' claim of unlawful entry into the Lowther residence on the issue of whether Mrs. Lowther voluntarily consented to the entry. **Doc. 174.** Subsequently engaging in a standard summary judgment analysis, the Court concluded that genuine disputes of material fact existed that were more appropriately reserved for a jury. *Id.* at 25. The Court also denied Plaintiffs' Cross Motion for Partial Summary Judgment on the same count. Both parties seek reconsideration of the Court's decisions. County Defendants claim, *inter alia*, that the Court erred in refusing to consider their argument that exigent circumstances justified the warrantless entry and that on the issue of consent, Plaintiffs failed to identify a Tenth Circuit or Supreme Court case on point to demonstrate clearly established law that would notify the deputies that their conduct was in violation of Mrs. Lowther's rights. **Doc. 183 at 7-8.** Plaintiffs in turn contend that the genuine issues of material fact that the Court found in denying their Cross Motion for Partial Summary Judgment are not germane to the legal issue of whether Mrs. Lowther voluntarily consented to the entry. **Doc. 180 at 2**.

### A.  Exigency

County Defendants argue that the imminent danger the Court found to justify the warrantless removal of the Lowther children likewise permitted the warrantless entry under the exigent circumstance exception to the warrant requirement. In its prior Memorandum and Opinion Order the Court declined to consider County Defendants' arguments relating to exigent

circumstances, finding that they had failed to adequately raise the argument in their initial brief when discussing the issue of the warrantless entry (Count IV)[23]. **Doc. 174 at 25 fn 24.**

Upon review, the Court has determined that County Defendants are correct. County Defendants' Motion for Partial Summary Judgment (Doc. 59) does raise the argument, and their Reply (Doc. 130) to Plaintiffs' Cross Motion for Summary Judgment (Doc. 81), was also a Response to Plaintiffs' cross motion, and thus the Court should have entertained those arguments. After careful consideration, the Court now holds that County Defendants are entitled to qualified immunity for the warrantless entry into the Lowther residence on the basis of exigent circumstances.

**<u>Exigent Circumstances Justified County Defendants' Warrantless Entry</u>**

Plaintiffs set for two arguments in response to County Defendants' exigent circumstances argument, namely, that (1) the children were not in imminent danger because they were alone with Mrs. Lowther in the household and (2) that County Defendants manufactured the exigency by repeatedly threatening Mrs. Lowther with detainment or arrest if she continued to deny them entry and access to the children.

**1.   <u>The Court Rejects Plaintiffs' First Argument</u>**

Plaintiffs' argument is effectively the same they advanced previously in their Cross Motion for Partial Summary Judgment. **Doc. 81 at 51-53**. Plaintiffs again posit that the children were not in imminent danger of serious injury or abuse because:

> … Dr. Lowther, who was the only parent accused of abuse, had been arrested and could not enter the home; Mrs. Lowther had been detained at the front door and was complying with instructions to keep the front door open; the children could be seen inside the home; Mrs. Lowther did not know that Dr. Lowther was accused of abuse; County Defendants were able to obtain a warrant to enter and search the home that very same evening; and most importantly, County Defendants actions and behavior at the scene created the perception that Mrs. Lowther was being uncooperative when all she

---

[23] The Court did consider the exigent circumstances argument as properly asserted for other Counts.

was doing was exercising her constitutional right to keep the police out of her home when they did not present her with a search warrant—a constitutional right most Americans know is theirs. In other words, County Defendants manufactured the exigency.

**Doc. 197 at 12-13**.

Plaintiffs further assert the unsupported argument that in order to find a risk of imminent danger, the Court "must" find that it was Mrs. Lowther who was accused of abusing A.L. and that the only evidence that could even be construed as her "uncooperativeness" was to deny the officers entry into her home. *Id*. at 13.

The Court has already addressed and rejected these same arguments when ruling on the issue of the seizure and removal of the Lowther children, and Plaintiffs have not provided any new facts or law that persuades the Court it was mistaken. **Doc. 174 at 35-39.** Briefly, many of the facts upon which the Court previously found exigent circumstances justifying the removal of the children existed equally at the time of the warrantless entry and formed the basis for the Court's determination that there was probable cause to arrest, and reasonable suspicion to detain, Dr. Lowther. **Doc. 159 at 15-19.** The exigency was further evidenced by the graphic, disturbing nature of the report dictating A.L.'s disclosures to her teacher, the content of which CYFD confirmed by reaching out directly to DuBoise. Plaintiffs also disregarded the fact that while Mrs. Lowther was not accused of abuse, she was being investigated for lack of supervision. During the course of the interaction in the doorway, Mrs. Lowther sent the children to their rooms, out of sight of the officials. These issues all existed prior to the entry. Moreover, the Court previously found that it was not unreasonable for officers to believe that Mrs. Lowther was subject to her husband's control and that, "The initial information available to County Defendants, at the very least, is sufficient " 'evidence giving rise to a reasonable and articulable suspicion that the child has been abused or is in imminent peril of abuse. *Arredondo*, 462 F.3d at 1298." **Doc. 174 at 37.** Although this was

decided in the context of the warrantless removal of the children, the Court believes it is applicable here.[24] Accordingly, the Court holds that County Defendants are entitled to qualified immunity on Count IV under the exigent circumstances exception to a warrantless entry.

### 2.   <u>County Defendants did not Create the Exigency</u>

Plaintiffs aver that under the Fourth Amendment "the Court must consider" whether County Defendants manufactured the exigency to enter the Lowther residence by repeatedly threatening to detain or arrest Mrs. Lowther for denying them access to the children in violation of NMSA § 30-6-4 during their interaction with her at the door. **Doc. 197 at 3, 12-13**. The Court rejects this argument for the preceding reasons in its discussion of whether exigent circumstances existed justifying warrantless entry. The Court is unconvinced by Plaintiffs' argument that to hold as such, under the particular circumstances of this case, effectively negates any individual parent's ability to assert his or her constitutional rights to deny entry into the home as a general rule.

### B.   <u>Consent</u>

Having determined that County Defendants are entitled to qualified immunity on other grounds, the Court nevertheless turns to the dispute relating to whether Mrs. Lowther voluntarily consented to the entry. The crux of County Defendants' arguments with respect to consent is that Plaintiffs failed to identify a case evincing clearly established law. County Defendants assert that clearly established law must not be defined at a high level of generality (*Ashcroft v. al-Kidd*, 563 U.S. 731, 742, 131 S. Ct. 2074, 2084, 179 L. Ed. 2d 1149 (2011) (citations omitted). Specifically, they argue that "Plaintiffs cited to of *Cortez v. McCauley*, 478 F.3d 1108, 1124 (10th Cir. 2007);

---

[24] The full analysis of the facts giving rise to reasonable suspicion of imminent abuse or risk of abuse are contained within the Court's prior Memorandum and Opinion Orders (Docs. 159 and 174). The Court assumes some familiarity with these Orders and thus does not restate these grounds in their entirety.

*Roska ex rel. Roska v. Peterson*, 328 F.3d 1230, 1248–49 (10th Cir. 2003); and *Payne v. Wilder*, No. cv-16–0312 JB/GJF, 2017 WL 2257390, at *41 (D.N.M. Jan. 3, 2017)…. But none of those cases clearly established that County Defendants' actions regarding obtaining Mrs. Lowther's consent violated her rights or addressed the materially different factual finding that she allowed them into her home." **Doc. 183 at 9.** County Defendants note the Court's factual finding that Mrs. Lowther "allowed" deputies to enter the home and contrast this with the Court's ensuing statement that it was unclear whether Mrs. Lowther voluntarily consented to the entry. They claim that "… the Court does not analyze whether the law was clearly established that Mrs. Lowther's actions equated to and constituted implied consent, and whether it was clearly established that Deputies entering her home, once she allowed them, would violate her rights or was objectively unreasonable." *Id*. Defendants also proffer that there is no case on point that clearly establishes that the deputies violated Mrs. Lowther's right by relying upon NMSA § 30-6-4 to obtain her implied consent to enter the residence. *Id.* **at 11.** Finally, they argue that the Court's citation to *Eidson v. Owens* (515 F.3d 1139, 1146 (10th Cir. 2008)) for the proposition that it is well established that "a suspect's consent to search may be tainted by a threat of detention that essentially amounts to an arrest if consent is refused.," defines the right too broadly under the facts of this case. *Id*.

Plaintiffs contend that the Court previously addressed County Defendants' contentions regarding the nature of Mrs. Lowther's consent; that *Eidson* is sufficient Tenth Circuit precedent to demonstrate the coercive nature of the officers' conduct and to put them on notice; and that any alleged reliance upon NMSA § 30-6-4 was clearly unreasonable. **Doc. 197 at 15-17.**

Preliminarily, the Court does not find an issue with its description in the factual findings that Mrs. Lowther "allowed" the deputies to enter and its later determination that it was unclear

whether she consented to the entry. Based upon the record and the belt tape audio, it was accurate of the Court to state that Mrs. Lowther allowed the deputies to enter the residence i.e. she did not actively resist the instant of entry verbally or physically. This does not dispose of the issue as to whether her consent was voluntary.

With respect to their arguments concerning issue of clearly established law, the Court disagrees with County Defendants. While it is true, as County Defendants have argued, that "The ultimate question is whether the officers' actions are objectively reasonable in light of the facts and circumstances confronting them." *Davis v. Clifford*, 825 F.3d 1131, 1135 (10th Cir. 2016) (quoting Casey v. City of Fed. Heights, 509 F.3d 1278, 1281 (10th Cir. 2007) (quotation omitted)), at the same time "[w]e cannot find qualified immunity wherever we have a new fact pattern." *Casey v. City of Federal Heights,* 509 F.3d 1278, 1284 (10th Cir.2007). Moreover, "[A] general constitutional rule ... can apply with obvious clarity to the specific conduct in question, even though [such conduct] has not previously been held unlawful." *Dalcour v. City of Lakewood*, 492 Fed. Appx. 924, 933–34 (10th Cir. 2012) (quoting *Anderson v. Blake,* 469 F.3d 910, 914 (10th Cir.2006) (internal quotation marks and alteration omitted)). Rather, "the qualified immunity analysis requires that we determine whether a reasonable officer would have known that the conduct at issue was unconstitutional." *Id*.

The Court held, and continues to hold, that at the time of the subject incident the law was clearly established that "a suspect's consent to search may be tainted by a threat of detention that essentially amounts to an arrest if consent is refused." *Eidson*, 515 F.3d at 1146. On this issue, in its prior Memorandum and Opinion, the Court relayed the following facts:

> Mrs. Lowther, at home alone with her children, was confronted at her door by multiple officers (and Morales) requesting entry in order to conduct a child welfare check. She was immediately and repeatedly informed that she could be arrested or detained for denying access to the children. During the ensuing discussion, when

Mrs. Lowther expressed that her daughter was not unsafe, one officer interjected that if this was his investigation Mrs. Lowther would already be handcuffed in the back of a police car, and that "she might want to consider her actions." Immediately prior to the entry, twice in succession, Small informed Mrs. Lowther that medical personnel was coming to check the children and that she could either let them in or be detained. The Court also notes, while not dispositive, during Wootton's questioning of Mrs. Lowther, Thornton acknowledged to Mrs. Lowther that she could have interpreted the officers' interactions as a "scare tactic," but that it was not the officers' intention that their statements be received as such. *See* Ex. F at 11:11-29; Doc. 127 Ex. 7 at 14:8-18.

**Doc. 174 at 18.**

The Court rejected County Defendants' arguments that the law regarding consent is not well settled in the Tenth Circuit with respect to warrantless entries during a child abuse investigation. **Doc. 174 at 21-25.** The Court also disagrees with County Defendants' assertion that Plaintiffs must proffer a case that considers clearly established law in the specific context of officers utilizing threats to arrest or detain an individual under NMSA § 30-6-4 to gain entry to a home. The Court believes that, in this particular instance, this would require an overly particularized search for exact facts. The Court has scrutinized NMSA § 30-6-4, which does not provide for warrantless entry into and search of a home. In light of clearly established precedent regarding consent to a warrantless entry, the Court holds that a reasonable officer would know that repeatedly threatening an individual with arrest or detention to gain access to a home without a warrant is inherently unconstitutional. Thus, while the Court has granted qualified immunity pursuant to the emergency circumstances exception, thereby disposing of Count IV, it notes its nonconcurrence with County Defendants' position as to consent.

### The Court Denies Plaintiffs' Motion for Reconsideration on Count IV

Plaintiffs move for Reconsideration of the Court's initial decision to deny summary judgment in favor of Plaintiffs on the issue of the warrantless entry, where it found that: Plaintiffs had not adequately alleged a pervasive custom such that BSCO could be responsible as the

26

municipal entity; there was insufficient information into Wootton's personal participation in the warrantless entry to determine possible supervisor liability; and that genuine issues of material fact, including questions raised by the belt tape audio upon which the parties relied, were best preserved for a jury to decide whether Mrs. Lowther had actually voluntarily or impliedly consented to the entry. **Doc. 174 at 25-27.** Having granted qualified immunity to County Defendants under the emergency circumstances exception, the argument is moot. Nevertheless, the Court notes that Plaintiffs' arguments on this matter are unpersuasive. While the Court denied qualified immunity on the issue of consent, it found that Plaintiffs had not carried their burden for summary judgment in light of the disputed facts. **Doc. 174 at 25-27.** The Court has not been convinced otherwise here. Accordingly, Plaintiffs' Motion for Reconsideration of Count IV is **denied.**

### Mrs. Lowther's Fourth Amendment Unlawful Detention Claim (Count III)

Plaintiffs request reconsideration of the Court's dismissal of Mrs. Lowther's Fourth Amendment unlawful detention claim because the Court "failed to consider that County defendants entered the home unlawfully to detain her." **Doc. 180 at 5.** Plaintiffs state that they advanced two arguments, that (1) the officers entered the home unlawfully without a warrant, voluntary consent, or exigent circumstances and (2) that reasonable suspicion did not support the detention. **Doc. 81 at 56-59.** They did not claim that Mrs. Lowther was subject to an arrest. Plaintiffs assert that the Court only addressed the latter issue but failed to appropriately consider the former.

In their Cross Motion, Plaintiffs likened Mrs. Lowther's case to *Cortez v. McCauley* (478 F.3d 1108 (10th Cir. 2007)), where the Circuit Court held that plaintiff Tina Cortez was subject to

an investigatory detention absent reasonable suspicion.[25] Based on that case, this Court determined

that Mrs. Lowther had been subject to a detention, but further found that, unlike *Cortez*, there was

reasonable suspicion to detain Mrs. Lowther. The Court provided extensive reasoning as to how

the facts and source of information relating to the alleged abuse differed markedly between *Cortez*

and the subject action, and thus that *Cortez* could not serve as clearly established law. ***See* Doc.**

**174 at 47-48**. The Court further notes that in supporting their argument in the Cross Motion,

Plaintiffs advanced unsubstantiated factual arguments without appropriate reference to the record

such as, "The record evidence demonstrates that the only reason the County defendants detained

Mrs. Lowther is because she did not immediately allow them into the home. *See* Plaintiffs' UMF

No." **Doc. 81 at 58-59.** Plaintiffs have not convincingly elicited why the Court's reasoning was

unsound, particularly in light of Plaintiffs' cited cases.

In response to Plaintiffs' Motion for Reconsideration, County Defendants assert that the

Court's conclusion that imminent risk of abuse constituted emergent circumstances justifying

removal of the children should apply equally to Mrs. Lowther's allegations in Count III. (*Armijo*,

601 F.3d at 1073 ("just as exigent circumstances permit a warrantless home entry, emergencies

may justify a warrantless seizure in the home"). Specifically, County Defendants posit that the

Court's finding that "officers of reasonable competence could disagree as to whether emergency

circumstances existed justifying the immediate removal of the Lowther children, which supports

granting qualified immunity," is applicable here. The Court agrees, and its determination that the

entry was justified under the exigent circumstances exception to the warrant requirement renders

---

[25] In *Cortez*, officers responded to a phone call from a nurse, relaying information she had
been told by the mother of a "barely-verbal" two-year-old, who had told the mother that her babysitter Tina Cortez's
[husband], Rick Cortez, had "hurt her pee pee." *Cortez v. McCauley*,
478 F.3d at 1116.

moot Plaintiffs' argument that County Defendants entered unlawfully. Therefore, the Court denies Plaintiffs' Motion for Reconsideration on Count III.

### First Amendment Retaliation against Mrs. Lowther (Count IX)

Plaintiffs contended that Wootton violated Mrs. Lowther's First Amendment rights, purporting that he seized and removed the Lowther children on August 30, 2017 in retaliation for Mrs. Lowther's request for an attorney immediately prior to his interviewing her. **Doc. 166 Amended Complaint at ¶¶ 308-314.** County Defendants argued that Wootton was entitled to qualified immunity because he had reasonable suspicion to remove the children. **Doc. 59 at 18-19.** The Court decided to defer its ruling on the matter in light of conflicting testimony that made it unclear whether Mrs. Lowther had in fact requested an attorney prior to her interview with Wootton and because the officers' belt tape audio did not reflect the occurrence. **Doc. 174 at 48-49.**

County Defendants request the Court alter its decision deferring its qualified immunity ruling. **Doc. 183 at 14.** County Defendants suggest that the Court should analyze Plaintiffs' claim, and that even assuming Plaintiffs' version of the facts are true, that Mrs. Lowther requested an attorney, the law is not clearly established that Wootton violated her First Amendment rights because the Court has already found that reasonable suspicion of imminent danger justified removal of the children. Specifically, County Defendants claim that "based on the recent *Nieves* [*v. Bartlett*, 139 S. Ct. 1715, 1722, 204 L. Ed. 2d 1 (2019)] case applying the but-for requirement, it is not clearly established that removing children where reasonable suspicion exists to do so is retaliatory." *Id*. **at 14-15.** Plaintiffs argue that County Defendants have "misapprehended" the nature of their First Amendment claim and that reliance upon *Nieves* is "misplaced." **Doc. 197 at 19.** Having carefully reviewed the parties' arguments and the law, the Court concludes that

Plaintiffs failed to meet their burden to demonstrate that the law was clearly established such that

Wootton is entitled to qualified immunity.

### The Law Regarding First Amendment Retaliation

> Official reprisal for protected speech "offends the Constitution [because] it threatens to inhibit exercise of the protected right," *Crawford–El v. Britton,* 523 U.S. 574, 588, n. 10, 118 S.Ct. 1584, 140 L.Ed.2d 759 (1998), and the law is settled that as a general matter the First Amendment prohibits government officials from subjecting an individual to retaliatory actions, including criminal prosecutions, for speaking out, *id.,* at 592, 118 S.Ct. 1584; see also *Perry v. Sindermann,* 408 U.S. 593, 597, 92 S.Ct. 2694, 33 L.Ed.2d 570 (1972) (noting that the government may not punish a person or deprive him of a benefit on the basis of his "constitutionally protected speech").

*Hartman v. Moore*, 547 U.S. 250, 256, 126 S. Ct. 1695, 1701, 164 L. Ed. 2d 441 (2006).

"If an official takes adverse action against someone based on that forbidden motive, and 'non-

retaliatory grounds are in fact insufficient to provoke the adverse consequences,' the injured person

may generally seek relief by bringing a First Amendment claim." *Nieves v. Bartlett*, 139 S. Ct. at

1722. (internal citations omitted).

In *Nieves* The Supreme Court clarified the requisite elements to successfully show a

violation:

> To prevail on such a claim, a plaintiff must establish a "causal connection" between the government defendant's "retaliatory animus" and the plaintiff's "subsequent injury." *Hartman*, 547 U.S. at 259, 126 S.Ct. 1695. It is not enough to show that an official acted with a retaliatory motive and that the plaintiff was injured—the motive must *cause* the injury. Specifically, it must be a "but-for" cause, meaning that the adverse action against the plaintiff would not have been taken absent the retaliatory motive. *Id.,* at 260, 126 S.Ct. 1695 (recognizing that although it "may be dishonorable to act with an unconstitutional motive," an official's "action colored by some degree of bad motive does not amount to a constitutional tort if that action would have been taken anyway").

*Id.* at 1722. (emphasis in original).

### Plaintiffs Have Not Cited Clearly Established Law

As part of the burden under qualified immunity, Plaintiffs must cite to a Tenth Circuit or Supreme Court precedent "close enough on point to make the unlawfulness of the officers' actions apparent." *McInerney v. King*, 791 F.3d 1224, 1236–37 (10th Cir. 2015). In their Cross Motion for Partial Summary Judgment and Response to County Defendants' Motion for Partial Summary Judgment, Plaintiffs cited solely to *Malik v. Arapahoe County Dept. of Social Services* (191 F.3d 1306 (10th Cir. 1999)), for the premise that "…the law is well-established by virtue of the Tenth Circuit's decision in [*Malik*] that "[a]n individual's First Amendment rights of association and free speech are violated when a police officer retaliates against [an individual] for retaining an attorney." **Doc. 81 at 63.** However, the facts in *Malik* are too distinct from the instant action to serve as clearly established law. *See Halley*, 902 F.3d at 1157. ("…[W]hile general statements of law can sometimes provide fair warning that certain conduct is unconstitutional, they only do so if they 'apply with obvious clarity to the specific conduct in question.' 'General legal standards therefore rarely clearly establish rights.'") (internal citations omitted).

In *Malik*, the Court took issue with the defendants' procurement of a court order to seize a child "through distortion, misrepresentation and omission[s]," allegedly in retaliation for the mother having obtained counsel. *Malik*, 191 F.3d at 1316 ("Officials cannot reasonably assume that the law permits them to obtain a custody order in retaliation for a parent's retaining counsel and through reckless omission of probative facts to a magistrate.").

Here, the facts at hand differ so substantially that it cannot be said that *Malik* would put Wootton on notice that his conduct in the instant action violated Mrs. Lowther's rights. Wootton was provided with a report from CYFD concerning serious allegations of sexual abuse of A.L. by her father. This information was provided to CYFD by A.L.'s teacher, who had spoken directly with A.L., where she had articulated the alleged abuse both verbally and with physical hand

gestures. Additionally, the report included that A.L had stated that her brother W.L. touched her as well and that he was also subject to abuse. CYFD, through Morales, reached out to DuBoise to confirm the contents of the report. There are no allegations here of securing a court order for custody through deliberate misinformation in retaliation for a parent obtaining counsel.

Additionally, "When circumstances objectively justify the officers' actions, we do not consider the officers' subjective motivations." *Armijo ex rel. Armijo Sanchez v. Peterson*, 601 F.3d 1065, 1071 (10th Cir. 2010) (quoting *Brigham City,* 547 U.S. 398, 406, 126 S. Ct. 1943, 1949, 164 L. Ed. 2d 650 (2006)). Plaintiffs have not provided a case demonstrated that it was clearly established that removing the children based on reasonable suspicion and exigent circumstances violated Mrs. Lowther's First Amendment rights. The Court thinks that the removal of the children under the circumstances was plainly reasonable, having already concluded that there was reasonable suspicion of abuse or imminent abuse and that the Lowthers' own conduct objectively justified removal of the Lowther children. **Doc. 174 at 36-38.** The Court disagrees with Plaintiffs that the facts of *Nieves* are distinguishable such that its application to this action is "misplaced". Thus, under the circumstances, Wootton would be entitled to qualified immunity irrespective of any subjective intent. Accordingly, the Court grants County Defendants' Motion to Alter Judgment with respect to Count IX on the basis of qualified immunity.

## CONCLUSION

For the reasons stated above, Plaintiffs' Motion for Reconsideration is denied. County Defendants' Motion to Alter Judgement is granted in part and denied in part.

**IT IS THEREFORE ORDERED** that Plaintiffs' Motion for Reconsideration **(Doc. 180),** is **DENIED**.

**IT IS FURTHER ORDERED** that County Defendants' Motion to Alter Judgment **(Doc. 183),** is **GRANTED IN PART and DENIED IN PART**. Plaintiffs' Counts IV and IX are **DISMISSED.**

KEA W. RIGGS

UNITED STATES DISTRICT JUDGE