IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

ADAM LOWTHER and JESSICA LOWTHER,
on behalf of themselves and as next friends to
their minor children, W.L. and A.L.,

    Plaintiffs,

v.

CHILDREN YOUTH AND FAMILIES
DEPARTMENT, *et al.*,

    Defendants.

No. 1:18-cv-00868-MIS-JFR
consolidated with
No. 1:19-cv-01205-MIS-JFR

**AMENDED MEMORANDUM OPINION AND ORDER
ON REMAINING CYFD DEFENDANTS' RENEWED MOTION FOR
SUMMARY JUDGMENT BASED ON QUALIFIED IMMUNITY (ECF NO. 286)**

THIS MATTER is before the Court on the Renewed Motion for Summary Judgment Based on Qualified Immunity filed by Defendants Maria Morales and Andrea Miles ("CYFD Defendants"). ECF No. 286. Plaintiffs Adam Lowther and Jessica Lowther filed their Response on behalf of themselves and their minor children, and the CYFD Defendants filed their Reply. ECF Nos. 305, 306. Having considered the parties' submissions, the record, and the relevant law, the Court will grant the Motion.

**PROCEDURAL BACKGROUND**

This case arises from an investigation of alleged child abuse at Plaintiffs' home, resulting in action by the Bernalillo County Sheriff's Office ("BCSO") and Children Youth and Families Department ("CYFD") to take temporary custody of the Lowther children two separate times, on August 30, 2017 (the "first seizure") and September 6, 2017 (the "second seizure"). Plaintiffs filed this case pursuant to 42 U.S.C. § 1983 and the New

Mexico Tort Claims Act, alleging that Defendants violated their civil rights and committed torts against them based on Defendants' handling of the investigation, including but not limited to the two seizures. *See generally* 1st Am. Compl., ECF No. 166. The Court has already dismissed CYFD as a named party. ECF No. 308. The Court has also disposed of all claims against individually named CYFD employee Defendant Morales relating to the first seizure, as alleged in Counts IV and V. ECF Nos. 214, 266, 308.[1]

The sole remaining claim against the CYFD Defendants relates to the second seizure, as alleged in Count VI of the First Amended Complaint, in which Plaintiffs allege that Defendants Morales and Miles, acting under color of law, unlawfully seized the Lowther children on September 6, 2017 "without a warrant or reasonable suspicion the children were in imminent danger," in violation of the Fourth and Fourteenth Amendments

---

[1] The present case, No. 1:18-cv-00868 ("lead case"), has been consolidated with a related case, No. 1:19-cv-01205 ("companion case"), for discovery purposes; the Court has reserved ruling on the issue of whether to consolidate the cases for trial. ECF No. 276. In the lead case, the only remaining claim (besides the claim at issue in this opinion) is brought by Dr. Lowther against the Bernalillo County Sheriff's Department (a/k/a "Bernalillo County Sheriff's Office") for defamation (Count XIII). ECF No. 166 at 46. In the companion case, several claims are pending against Sheriff's Deputy Jacob Wootton and the Board of County Commissioners of Bernalillo County under New Mexico law. *See* No. 1:19-cv-01205, ECF No. 35.

The Court has already granted qualified immunity to Defendant Morales regarding the first seizure, as well as the alleged unlawful entry of Defendants into the Lowther home relating to that seizure. *See* ECF No. 166 at 41; ECF No. 214 at 52 (granting summary judgment as to Count V); ECF No. 266 at 4 (granting summary judgment as to Count VI). (Defendant Miles was not a party to Count IV or Count V. ECF No. 166 at 41.) The Court's granting of qualified immunity regarding the first seizure was based, at least in part, on its conclusion that there was no constitutional violation by Defendant Morales during the first seizure (i.e., the first prong of the qualified immunity analysis). *See, e.g.*, ECF No. 214 at 36, 38–40. The Court also concluded that Plaintiffs failed to cite to clearly established law (i.e., the second prong). *Id.* at 40–47. With regard to the second seizure (i.e., the subject of the present Motion), however, the Court will address only the second prong of the qualified immunity analysis.

The Court previously deferred ruling on CYFD Defendants' request for qualified immunity regarding the second seizure, so that the parties could conduct limited discovery. ECF No. 214 at 47–51 (deferring ruling on Count VI under Fed. R. Civ. P. 56(d)). There is some confusion as to whether Defendant Miles previously requested qualified immunity on Count VI and whether the Court ruled on that request. *See, e.g.*, ECF No. 172 (Andrea Miles' Notice of Joinder in CYFD Defendants Dispositive Motions); ECF No. 214 at 1 n.1 (order removing Defendant Miles as a party to the CYFD Defendants' original motion for summary judgment based on qualified immunity, ECF No. 106). Because the Court is now ruling on the renewed qualified immunity motion, as to both remaining CYFD Defendants, this discrepancy (if any) is immaterial.

to the United States Constitution.[2] ECF No. 166 at 42. The CYFD Defendants now renew their request for summary judgment on the basis of qualified immunity, relating to the second seizure.

## FACTUAL BACKGROUND

The material facts stated below are either undisputed or stated in the light most favorable to the nonmovant:[3]

On August 30, 2017, following a teacher's report of potential abuse of Plaintiff A.L. by her father, Plaintiff Adam Lowther ("Dr. Lowther"), the Lowther children (A.L and W.L.) were removed from the family home and taken into protective custody. *See* ECF No. 286, UMF 17; ECF No. 81-1 at 5, ¶ 8; *id.* at 10, ¶ 30. Dr. Lowther was eventually charged in connection with the above reports of potential abuse.[4] ECF No. 286, UMF 23. In addition

---

[2] Count VI alleges the date of the second seizure to be "on or about September 7, 2017." ECF No. 166 at 42. However, as noted in the Factual Background section, *infra*, the second seizure occurred on September 6, 2017. The Court determines that any discrepancy between allegations stating "September 6" as opposed to "September 7" is immaterial to the present Motion, and the Court therefore uses a date of September 6, 2017 for consistency.

[3] For purposes of the Motion for Summary Judgment, the court resolves all doubts against the movant, construes all admissible evidence in the light most favorable to the nonmovant, and draws all reasonable inferences in favor of the nonmovant. *See* Standard for Summary Judgment section.

The Court has chosen to include only proffered facts that are material to the present Motion or helpful for background purposes. To the extent that a fact has been omitted, the Court hereby deems such fact immaterial to the present Motion.

The Court notes that Plaintiffs' "Summary of Facts" does not comply with D.N.M. LR-Civ. 56.1(b), which requires any additional facts to be lettered. The Court requests that Plaintiffs follow the Local Rules of Civil Procedure in the future.

[4] Defendant Wootton signed a Criminal Complaint, which was filed in New Mexico state court on August 31, 2017. *See* ECF No. 105-1 at 196–197. On October 18, 2018, the charges against Dr. Lowther were essentially dropped because the Second Judicial District Attorney's office declined prosecution based on its assessment that the evidence would be insufficient to support a conviction beyond a reasonable doubt. *See* ECF No. 81-1 at 1–3 (noting that the teacher's behavior may have impacted the child's disclosures, the child's credibility was at issue, there was a lack of documentary or DNA evidence, the child had a completely normal genital examination, there were plausible reasons for the child's anal injury, the polygraph evidence was favorable to Dr. Lowther, and other reasons).

to the investigation of Dr. Lowther, CYFD employees, including CYFD investigator Defendant Morales, started an investigation of Plaintiff Jessica Lowther ("Ms. Lowther"), based on Defendant Morales' doubts about Ms. Lowther's ability to supervise her children.[5] *See id.*, UMF 22; ECF No. 305-2 at 3. These doubts arose from, among other things, the appearance that Ms. Lowther was subject to Dr. Lowther's control. *See* ECF No. 286, UMFs 6–7, 12, 15 (Ms. Lowther initially refused to allow law enforcement to enter the house to check on the children, based on her husband's instruction "not to let [law enforcement] in.");[6] UMF 10 (Ms. Lowther was surprised that law enforcement was conducting an investigation based on the mere allegations of a four-year-old);[7] UMF 11 (Ms. Lowther made a statement to deputies that her "duty was to [her] husband").[8]

On September 1, 2017, CYFD developed a safety plan to release the children from protective custody into the custody of Ms. Lowther, with the children's maternal grandparents, John and Terry Borg ("Mr. Borg" and "Ms. Borg," respectively; collectively

---

[5] By the time of the second seizure, Maria Morales no longer served as the lead CYFD investigator of the Lowther matter; however, she did participate in the meeting that resulted in termination of the safety plan and initiation of the second 48-hour hold, including expressing her doubts over the ability of Ms. Lowther's parents, John and Terry Borg, to act as safety monitors. ECF No. 305-2 at 6; ECF No. 106-1 at 13–14.

[6] Ms. Lowther disputes UMF 15, stating that she was not uncooperative or under Dr. Lowther's control and that she simply "knew it was not appropriate to let [law enforcement] into the house without a warrant." *See* ECF No. 305, Response to UMF 15 (citing ECF No. 81-1 at 10, ¶ 31). The Court finds that this dispute is immaterial to the second prong of the qualified immunity analysis, which forms the basis for the present opinion.

[7] Plaintiffs dispute Defendants' UMFs 10–11, stating that Ms. Lowther's initial disbelief was taken out of context, given that she "had been told almost nothing about the allegations and had not been spoken to at all by Morales." *See* ECF No. 305, Response to UMF 10 (citing ECF No. 122, Response to UMF 10 (citing ECF No. 81, Plaintiffs' UMFs 26–27)); ECF No. 305, Response to UMF 11 (admitting the fact but disputing the inference that Ms. Lowther acted inappropriately). The Court finds that this dispute is immaterial to the second prong of the qualified immunity analysis, which forms the basis for the present opinion.

[8] *See supra* note 7 (no genuine dispute of material fact over UMFs 10–11).

"the Borgs"), acting as safety monitors. *Id.*, UMF 28.[9] CYFD's "safety monitor" provision exists in order to allow children to be returned to their parents' custody, even when CYFD has lingering concerns about the parents' ability to protect their children. *See id.*, UMFs 29–30.[10]

On September 4, 2017, CYFD held a transfer meeting with Ms. Lowther, Mr. and Ms. Borg, Defendants Morales and Miles, and CYFD supervisors Yvonne Meade and Robin Yoder to discuss returning custody of the children to Ms. Lowther, with the Borgs acting as safety monitors. ECF No. 286, UMF 33; ECF No. 106-1 at 117. The meeting participants agreed that Defendant Miles, an in-home services clinician, would work with the family. ECF No. 105-1 at 9–10; *see also* ECF No. 305-1 at 2 (stating Defendant Miles' job title). The Lowther children were then in the custody of Ms. Lowther under the safety monitor arrangement.[11]

On September 5, 2017, the Second Judicial District Court, County of Bernalillo, State of New Mexico (the "criminal court") held a hearing, in which the Assistant District Attorney ("ADA") expressed concerns regarding Dr. Lowther's potential access to the

---

[9] It is unclear from the parties' briefing when the children were returned to Ms. Lowther's custody; however, it appears likely that the children were returned to her custody on or prior to September 6, 2017, given that the "second seizure" at issue here occurred on September 6, 2017. *See* ECF No. 286, UMF 42. Irrespective of the discrepancy (if any), this issue is immaterial.

There is also a discrepancy in the record regarding when Defendant Miles first met Plaintiff Jessica Lowther and the Borgs. *See* ECF No. 105-1 at 9–10, ¶ 20 (Defendant Miles was present at the September 4, 2017 transfer meeting); ECF No. 221-1 at 3, ¶ 8 (Defendant Miles first met Plaintiff Jessica Lowther and the Borgs on September 5, 2017). The Court finds that this dispute is immaterial to the present Motion.

[10] Plaintiffs dispute ECF No. 30 with no supporting facts. Therefore, the Court deems ECF No. 30 undisputed.

[11] *See supra* note 9 (briefing is unclear as to when the Lowther children were returned to the custody of Ms. Lowther, but it appears that they were returned on or prior to September 6, 2017).

Lowther children via his influence over Ms. Lowther and her parents, the Borgs. ECF No. 286, UMF 35. This concern was based on information the ADA gained from recorded phone calls between Dr. and Ms. Lowther, in which they discussed leaving town with the children. *See id.*, UMF 36.[12]

Defendant Miles attended the September 5, 2017 criminal hearing, at which Mr. Borg was also present. *Id.*, UMFs 34, 37. Defendant Miles had previously explained to Mr. Borg that his role as a safety monitor required maintaining neutrality regarding the nature of a child's abuse disclosures—in other words, not expressing disbelief as to the truth of any abuse disclosures. *Id.*, UMFs 31–32; ECF No. 221-1 at 3–4, ¶ 8. However, during or immediately following the criminal hearing, Mr. Borg angrily expressed his disbelief to Defendant Miles on the allegations against Dr. Lowther, putting his hand on her, calling her his "helper," and telling her she needed to fix the situation. ECF No. 286, UMF 37. Mr. Borg's statements ran contrary to the instructions that Defendant Miles had recently given the Borgs about their duties as safety monitors, which required maintaining neutrality regarding the nature of a child's abuse disclosures. *See id.*, UMFs 31–32; ECF No. 221-1 at 3–4, ¶ 8.[13]

On the morning of September 6, 2017, the criminal court issued an order releasing Dr. Lowther from custody, on personal recognizance, under the conditions that (among other things) Dr. Lowther be monitored via GPS tracking, that he remain in his residence

---

[12] Regarding the parties' irrelevant dispute over UMF 36, *see infra* note 16.

[13] Plaintiffs state that ECF No. 31 is immaterial, relying generally on the Court's prior Amended Memorandum Opinion and Order, ECF No. 214, and the CYFD Defendants' Motion for Consideration, ECF No. 221 at 6–8, with no supporting facts. ECF No. 305 at 15. Therefore, the Court deems ECF No. 31 undisputed.

during nighttime hours, and that he not have contact with Ms. Lowther or the Lowther children. ECF No. 286-3 at 1–2. Within 30 minutes after the order was entered, CYFD personnel (including Defendants Morales and Miles) met to discuss their concerns regarding the Borgs' ability to act as safety monitors, given Dr. Lowther's imminent release from custody. ECF No. 286, UMF 39. As a result of the meeting, a CYFD employee (either Defendant Morales or Defendant Miles)[14] called Defendant Jacob Wootton, the same Sheriff's Deputy that conducted the first seizure, regarding initiating a second 48-hour hold. *Id.*, UMFs 17, 40. Defendant Wootton considered CYFD's input and concerns, and he then decided to place the Lowther children on a second 48-hour hold, before Dr. Lowther was released from jail. *Id.*, UMFs 41–43, 50.[15] At the time of the second 48-hour hold, CYFD still held its original concerns about the ability of Dr. and Ms. Lowther to care for their children, as well as new concerns about the ability of the Borgs to act as safety monitors and about the possibility that Dr. and Ms. Lowther posed a risk of absconding with the Lowther children. *Id.*, UMFs 36, 44–45.[16] Although the CYFD

---

[14] At his deposition, Defendant Wootton testified that he didn't know who actually contacted him to notify him of the second 48-hour hold; then he said perhaps it was "Maria," and then he said he believed her name was "Amanda, the in-home services provider." *See* ECF No. 286-4 at 2. Based on this information, and viewing the facts in the light most favorable to Plaintiffs, the Court finds he was likely referring to Defendant Maria Morales or Defendant Andrea Miles. *See id; see also* ECF No. 305-2 at 6 (Defendant Morales' testimony that Defendant Miles was an "In-Home Service Worker"). The Court finds that this issue is immaterial but helpful for background purposes.

[15] Although Plaintiffs do not dispute UMFs 41–42, they dispute UMF 43, claiming that "Detective Wootton did not conduct any investigation to determine whether the children were in imminent danger." ECF No. 305 at 15. Even assuming Plaintiffs' statement to be true, it does not contradict UMF 43. Therefore, the Court finds that there is no genuine dispute of material fact regarding UMF 43.

[16] Plaintiffs claim that UMF 36 is immaterial, given that "the criminal court issued an order releasing Adam." ECF No. 305, Response to UMF 36. However, Plaintiffs fail to explain how the Order Setting Conditions of Release makes UMF 36 immaterial to the present case. Although the criminal court set conditions of release that Dr. Lowther was required to follow, the order did not eliminate the concern that Dr. and Ms. Lowther might abscond with the Lowther children. Therefore, the Court finds that Plaintiffs have

7

Defendants could not order the second 48-hour hold on their own, and although the final decision to seize the children rested with law enforcement, the CYFD Defendants provided significant input to law enforcement regarding the decision to remove the Lowther children from their home; the CYFD Defendants also made the decision to terminate the safety plan and effectuate the second 48-hour hold, which ultimately led to the second seizure of the Lowther children. *Id.*, UMFs 51–53; ECF No. 305 at 7–8.[17] At least part of the basis for CYFD's quick action to terminate the safety plan and initiate a second 48-hour hold was the CYFD Defendants' concern that Dr. Lowther's release from jail was imminent. *See* ECF No. 286, UMF 39.

The day before the second seizure, although she had serious concerns about the Borgs acting as safety monitors, Defendant Miles (who was the primary investigator at that time) was not concerned that the children were in imminent danger. ECF No. 305-1 at 3; *see also* ECF No. 305-2 at 6 (Defendant Miles was the primary investigator prior to the second seizure).[18] Defendant Morales, who participated in the meeting that resulted

---

failed to raise a genuine dispute regarding the facts presented in UMF 36. Even if there were a genuine dispute, such dispute would be immaterial to the second prong of the qualified immunity analysis.

Plaintiffs also dispute UMF 45, stating that the "allegations raised in this UMF occurred after the decision to remove the children on September 6, 2017." ECF No. 305, Response to UMF 45. However, Defendants' UMF 45 relates to information gained after the "first removal" on August 30, 2017, not the second removal on September 6, 2017. ECF No. 286, UMF 45. Plaintiffs' response to UMF 45 does not cite to any materials in the record. ECF No. 305, Response to UMF 45. The Court finds that Plaintiffs have failed to raise a genuine dispute regarding the facts presented in UMF 45 and that, even if there were a genuine dispute, such dispute would be immaterial to the second prong of the qualified immunity analysis.

[17] The Court has not found any evidence in the record to suggest that the CYFD Defendants physically accompanied law enforcement to the Lowther home for the second seizure.

[18] Based on the context of the statement, the Court is hesitant to take Defendant Miles' statement as an admission that she was not concerned about the immediate safety of the Lowther children on September 5, 2017. *See* ECF No. 305-1 at 3. During the time to which Defendant Miles was referring, Dr. Lowther had not yet been released from jail, and therefore, it is possible that she meant that she was not immediately concerned about the safety of the children, only because Dr. Lowther was still in jail. Viewing

8

in the decision to begin the second 48-hour hold (along with Defendant Miles and nonparty CYFD supervisory employees), seemed "mostly concerned about Mr. Borg's ability to protect A.L. and W.L." from Dr. Lowther after his impending release from jail, even though Dr. Lowther "[had] been ordered not to have any contact with them." ECF No. 106-1 at 13–14.

## APPLICABLE LAW

### I. Standard for Summary Judgment

Rule 56 of the Federal Rules of Civil Procedure allows summary judgment when the evidence submitted by the parties establishes that no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. "[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the movant meets this burden, the nonmovant is required to put in the record facts showing that there is a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–52 (1986). A fact is "material" if under the substantive law it is essential to the proper disposition of the claim. *Id.* at 248.

The nonmoving party cannot rely upon conclusory allegations or contentions of counsel to defeat summary judgment. *See Pueblo Neighborhood Health Ctrs., Inc. v. Losavio*, 847 F.2d 642, 649 (10th Cir. 1988). Rather, the nonmovant has a responsibility

---

this statement in the light most favorable to Plaintiffs, and taking the words at face value, the Court must accept this statement as an admission that Defendant Miles was not concerned that the children were in imminent danger. Ultimately, the Court finds that this dispute is immaterial to the second prong of the qualified immunity analysis, which forms the basis for the present opinion.

to "go beyond the pleadings and designate specific facts so as to make a showing sufficient to establish the existence of an element essential to [their] case in order to survive summary judgment." *Johnson v. Mullin*, 422 F.3d 1184, 1187 (10th Cir. 2005) (quoting *McKnight v. Kimberly Clark Corp.*, 149 F.3d 1125, 1128 (10th Cir. 1998)).

It is not the court's role to weigh the evidence or assess the credibility of witnesses in ruling on a motion for summary judgment. *See Daniels v. United Parcel Serv., Inc.*, 701 F.3d 620, 627 (10th Cir. 2012). Rather, the court resolves all doubts against the movant, construes all admissible evidence in the light most favorable to the nonmovant, and draws all reasonable inferences in favor of the nonmovant. *See Hunt v. Cromartie*, 526 U.S. 541, 551–52 (1999); *see also Garrison v. Gambro, Inc.*, 428 F.3d 933, 935 (10th Cir. 2005). However, summary judgment may nevertheless be granted where "the evidence is merely colorable, or is not significantly probative." *Liberty Lobby, Inc.*, 477 U.S. at 249–50.

## II.   Qualified Immunity Standard

The doctrine of qualified immunity protects government officials sued in their individual capacity from monetary damages unless their actions violate a "clearly established" statutory or constitutional right. *City of Escondido v. Emmons*, 139 S. Ct. 500, 503 (2019) (quoting *Kisela v. Hughes*, 138 S. Ct. 1148, 1152 (2018)). A right is clearly established only when, at the time of the challenged conduct, "the right's contours were sufficiently definite that any reasonable official in the defendant's shoes would have understood that he [or she] was violating it." *Plumhoff v. Rickard*, 572 U.S. 765, 778–79 (2014).

"A plaintiff can demonstrate that a constitutional right is clearly established by reference to cases from the Supreme Court, the Tenth Circuit, or the weight of authority from other circuits." *Gann v. Cline*, 519 F.3d 1090, 1092 (10th Cir. 2008) (quoting *Anderson v. Blake*, 469 F.3d 910, 914 (10th Cir. 2006)) (internal quotation marks omitted). "The rule must be settled law, which means it is dictated by controlling authority or a robust consensus of cases of persuasive authority." *District of Columbia v. Wesby*, 138 S. Ct. 577, 289–90 (2018) (internal citations and quotation marks omitted). Although the plaintiff is not required to identify a case directly on point, "existing precedent must have placed the statutory or constitutional question beyond debate." *Kisela*, 138 S. Ct. at 1152 (quoting *White v. Pauly*, 137 S. Ct. 548, 551 (2017)). Clearly established law cannot be defined "at a high level of generality"; rather, it must be particularized to the facts of the case. *Ashcroft v. al-Kidd*, 563 U.S. 731, 742 (2011); *see Anderson v. Creighton*, 483 U.S. 635, 640 (1987). But "officials can still be on notice that their conduct violates established law even in novel factual circumstances." *Quinn v. Young*, 780 F.3d 998, 1005 (10th Cir. 2015) (quoting *Cortez v. McCauley*, 478 F.3d 1108, 1115 (10th Cir. 2007)). The dispositive question is whether the unlawfulness of the official's actions was apparent in light of pre-existing law. *Creighton*, 483 U.S. at 640.

When a defendant asserts qualified immunity at the summary judgment stage, "the burden shifts to the plaintiff to show that: (1) the defendant violated a constitutional right, and (2) the constitutional right was clearly established." *Kapinski v. City of Albuquerque*, 964 F.3d 900, 905 (10th Cir. 2020) (quoting *Koch v. City of Del City*, 660 F.3d 1228, 1238 (10th Cir. 2011)). The court may address these two inquiries in any order. *Pearson v. Callahan*, 555 U.S. 223, 236 (2009); *McCowan v. Morales*, 945 F.3d 1276, 1282 (10th

11

Cir. 2019). If the plaintiff fails to satisfy either test, the court must grant qualified immunity. *McCowan*, 945 F.3d at 1282 (quoting *Estate of Ceballos v. Husk*, 919 F.3d 1204, 1212–13 (10th Cir. 2019)). If the plaintiff succeeds, then—and only then—does the defendant bear the traditional burden of the movant for summary judgment. *Kapinski*, 964 F.3d at 905.

In recent years, the Supreme Court "has issued a number of opinions reversing federal courts in qualified immunity cases." *White v. Pauly*, 580 U.S. 73, 79 (2017). "The [Supreme] Court has found this necessary both because qualified immunity is important to society as a whole . . . and because as 'an immunity from suit, qualified immunity is effectively lost if a case is erroneously permitted to go to trial.'" *Id.* (citations and internal quotation marks omitted).

### III. Fourth Amendment Standard

The Fourth Amendment to the United States Constitution states:

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

U.S. Const. amend. IV. The protections of the Fourth Amendment are incorporated against the states through the Fourteenth Amendment. U.S. Const. amend. XIV; *Mapp v. Ohio*, 367 U.S. 643, 655 (1961). "It is a basic principle of Fourth Amendment law that searches and seizures inside a home without a warrant are presumptively unreasonable." *Payton v. New York*, 445 U.S. 573, 586 (1980) (quoting *Coolidge v. New Hampshire*, 403 U.S. 443, 477 (1971)) (internal quotation marks omitted); *see also Armijo ex rel. Armijo Sanchez v. Peterson*, 601 F.3d 1065, 1070 (10th Cir. 2010).

More specifically, "state officials may not remove children from the home, through either temporary seizures or the permanent termination of parental rights, without providing due process of law." *Gomes v. Wood*, 451 F.3d 1122, 1127 (10th Cir. 2006). However, under the emergency circumstances exception, "state officials may remove a child from the home without prior notice and a hearing when they have a reasonable suspicion of an immediate threat to the safety of the child if he or she is allowed to remain there." *Id.* at 1130. "[E]ven in these instances in which emergency removal is justified, the state must afford the parents a prompt post-removal hearing." *Id.*

## DISCUSSION

**I.    The CYFD Defendants are entitled to qualified immunity because Plaintiffs have not shown that the applicable law was clearly established, as applied to the specific factual circumstances of this case.**

In its discretion, the Court addresses the second prong, or "clearly established prong," of the qualified immunity analysis first. The Court finds that Plaintiffs have failed to set forth legal precedent showing that the CYFD Defendants violated clearly established law.

In order to defeat qualified immunity, Plaintiffs must demonstrate that, under the specific circumstances of this case, the right allegedly violated (i.e., the alleged illegal second seizure of the Lowther children on September 6, 2017, absent emergency circumstances, *see* ECF No. 166 at 41) was clearly established at the time of the alleged misconduct. *See Kerns v. Bader*, 663 F.3d 1173, 1180 (10th Cir. 2011). If a factual distinction between a prior case and the present case *might* make a constitutional difference, then by extension, the second prong of qualified immunity likely cannot be satisfied. *See, e.g., id.* at 1186–87 (where prior cases of warrantless access to information

13

involved "an unlawful campaign of sexual harassment," but the case at issue involved a warrantless request for a suspect's medical records in pursuit of an otherwise lawful investigation, the constitutional right was not clearly established for purposes of qualified immunity).

The Tenth Circuit has held, since its 2006 decision in *Gomes*, that state officials may remove a child from the home without prior notice and a hearing only when they have "reasonable suspicion of an immediate threat to the safety of the child if he or she is allowed to remain there."[19] 451 F.3d at 1130. In *Gomes*, a mother, Shauna Gomes, took her child to the doctor with a suspicious head injury, the doctor called the Utah Division of Child and Family Services to report the head injury, and the intake caseworker responded that, because the case did not appear to be an emergency, a child welfare

---

[19] *Gomes* is the most factually similar case submitted by Plaintiffs for purposes of showing the law regarding warrantless seizures of minor children was clearly established. *See* ECF No. 305 at 18–20 (Plaintiffs' assertion of cases supporting violation of a clearly established right). Besides *Gomes*, the remaining applicable cases cited by Plaintiffs are even less factually similar. *See Santosky v. Kramer*, 455 U.S. 745, 753–54 (1982) (establishing the level of process required for a court to terminate parental rights permanently); *Spielman v. Hildebrand*, 873 F.2d 1377, 1385–87 (10th Cir. 1985) (concluding that pre-adoptive parents were provided with adequate process where they were provided with a hearing prior to termination of their parental rights and that defendants were entitled to qualified immunity); *Roska ex rel. Roska v. Peterson*, 328 F.3d 1230, 1237–39, 1245 (10th Cir. 2003) (holding that warrantless seizure of a child from his home by child welfare caseworkers who entered home accompanied by police, based on suspected child abuse due to Munchausen Syndrome by Proxy, violated plaintiffs' constitutional rights); *Malik v. Arapahoe Cnty. Dep't of Soc. Servs.*, 191 F.3d 1306, 1315–16 (10th Cir. 1999) (concluding that it was clearly established law that government officials' procurement of an ex parte order through distortion, misrepresentation and omission, in order to seize a child, is a violation of the Fourth Amendment); *Hollingsworth v. Hill*, 110 F.3d 733, 736, 740–42 (10th Cir. 1997) (granting qualified immunity to a sheriff and sheriff's deputy for alleged unlawful seizure of children from a hotel room during service of a protective order); *Arredondo v. Locklear*, 462 F.3d 1292, 1295, 1298–99, 1302 (10th Cir. 2006) (finding no constitutional violation in warrantless seizure of minor children from their parents' custody, based on visible injuries to the children, combined with conflicting or implausible explanations provided by the parents). With the exception of *Arredondo*, all of the above cases were decided prior to the Tenth Circuit's adoption of the "reasonable suspicion" standard in *Gomes*. Further, of the above cases that actually found a constitutional violation, none involved factually similar circumstances to the present case. Plaintiffs cited to one other case, *Halley v. Huckaby*, 902 F.3d 1136 (10th Cir. 2018), but this case was decided after the events at issue in the present case, which occurred in 2017, and therefore *Halley* cannot be applied to the second prong of the qualified immunity analysis.

investigator would call him back the following day. *Id.* at 1124–25. Ms. Gomes took her child to the doctor again on each of the subsequent two days, and the mother even inquired why Child and Family Services had not yet contacted the doctor. *Id.* at 1125. Finally, on the third day, the doctor was able to speak with the child welfare investigator. *Id.* Although the child's injuries and the mother's explanations were suspicious, the doctor told the investigator that the mother's explanations were at least plausible and that he felt comfortable leaving the child in the mother's care. *Id.* Ultimately, the investigator disagreed, and after consulting with her supervisors and the Utah Attorney General's Office, the investigator contacted law enforcement, who, accompanied by the investigator, removed the child from the home two days later. *Id.*

Although Plaintiffs argue that the facts of the *Gomes* case were sufficient to put CYFD Defendants on notice of the potential unconstitutionality of their alleged conduct to terminate the safety plan and initiate a second 48-hour hold, the facts of the present case differ from those in *Gomes* in several significant ways. First, the child welfare caseworker in *Gomes* did not simply provide information to law enforcement that ultimately resulted in the child's removal from the home, but instead, the *Gomes* caseworker was physically present at the child's home and was an active participant in the child's removal as it was occurring. *Id*. Second, *Gomes* did not involve an immediate change in circumstances, whereas in the present case, it is apparent that the CYFD Defendants took swift action to terminate the safety plan and initiate a second 48-hour hold because of multiple changed circumstances, i.e., safety monitor Mr. Borg's actions in violation of the instructions provided to him by the in-home services clinician, combined with Dr. Lowther's imminent release from jail. Third, in the present case, CYFD had at least some factual basis to

15

believe that Dr. and Ms. Lowther would abscond with the children after his release from jail. Finally, Plaintiffs' cited cases involved seizures that were factually distinct from the present case, such as initial seizures (*Gomes, Roska*, *Malik, Hollingsworth*, and *Arredondo*) or seizures involving permanent termination of parental rights (*Santosky* and *Spielman*), not termination of a safety plan put in place in order to return children to the home after an initial seizure. *See supra* note 19. The factual circumstances of the present case make it very different from *Gomes*, such that a reasonable official in the CYFD Defendants' position might not see the applicability of *Gomes* when confronted with these circumstances.

For purposes of the second prong of qualified immunity analysis, it is irrelevant whether the CYFD Defendants' suspicion of imminent physical harm was reasonable; rather, the Court must focus on whether it would have been apparent to any reasonable official in the CYFD Defendants' position that that their conduct was unlawful. *Creighton*, 483 U.S. at 640. Even viewing the facts in the light most favorable to Plaintiffs, and even assuming for purposes of argument that emergency circumstances did not exist, the Court cannot conclude that it would have been apparent to any reasonable official in the CYFD Defendants' position that that their conduct was unlawful, given the specific factual circumstances here. The Defendants in the present case were at least somewhat removed from the actual harm alleged by Plaintiffs (i.e., they were not physically present at the removal), and there were several simultaneous factors at play (involving Dr. Lowther, Ms. Lowther, and the safety monitors) that made the applicability of *Gomes* far from apparent in the present case.

The Court is mindful of potential constitutional concerns over the warrantless removal of the Lowther children from their home, given that there were at least some measures in place by the criminal court to ensure that Dr. Lowther would not come into contact with the Lowther children or abscond with them. However, the second prong of the qualified immunity analysis essentially requires that the CYFD Defendants were on notice that they could not terminate the safety plan without violating the law, such that *every reasonable official* would have known not to terminate the safety plan under similar circumstances. *See Kerns*, 663 F.3d at 1180; *Al-Kidd*, 563 U.S. at 741. When applied to the present case, *Gomes* does not provide clear notice but instead a broad, general proposition of law, which is insufficient to satisfy the second prong of the qualified immunity analysis. *Al-Kidd*, 563 U.S. at 742; *Creighton*, 483 U.S. at 640.

The Court is unable to locate any other directly controlling authority or persuasive authority from the weight of other circuits establishing that every reasonable official in the CYFD Defendants' position would have known that they were violating Plaintiffs' constitutional rights.[20] Instead, the facts known to CYFD at the time indicated that (1) Dr. Lowther's release from jail was imminent; (2) CYFD had some level of concern that Dr. and Ms. Lowther might abscond with the children; and (3) one day prior to Dr. Lowther's release, Mr. Borg (a willingly neutral safety monitor and an essential part of the plan to return the Lowther children to their home) "had angrily expressed his disbelief to Defendant Miles as to the allegations against Dr. Lowther, putting his hand on her, calling

---

[20] See *supra* note 19 (analyzing the precedential cases submitted by Plaintiffs and concluding that none are factually similar to the present case).

her his 'helper,' and telling her she needed to fix the situation."[21] As of September 6, 2017, it was not clearly established that it would have been unlawful for CYFD to terminate the safety plan and initiate a second 48-hour hold, under these factual circumstances. In light of the Plaintiffs' failure to satisfy the second prong of the qualified immunity analysis, the Court must grant qualified immunity to the CYFD Defendants.

## II. The Court declines to address the CYFD Defendants' remaining arguments.

Because the Court has granted qualified immunity to the CYFD Defendants, thus fully disposing of the claims made against them, it will not address the merits of their other arguments.

## CONCLUSION

For the foregoing reasons, the CYFD Defendants' Renewed Motion for Summary Judgment Based on Qualified Immunity, filed on January 28, 2022, ECF No. 286, is hereby **GRANTED**.

Summary judgment is granted in favor of Defendants Maria Morales and Andrea Miles, based on qualified immunity, for all claims pertaining to the second removal of the Lowther children from their home, specifically Count VI of the First Amended Complaint. ECF No. 166 at 41–42.[22]

---

[21] Plaintiffs do not dispute the facts regarding Mr. Borg's behavior during or immediately following Dr. Lowther's criminal hearing, but instead they argue that these facts, even if true, do not justify the seizure of the Lowther children. ECF No. 286, UMF 37; ECF No. 305, Response to UMF 37. The Court finds this argument immaterial for purposes of the second prong of the qualified immunity analysis because it does not go to whether a reasonable official would have known that his or her conduct violated the law.

[22] On its face, Count VI of the First Amended Complaint appears to have been brought on behalf of the Lowther children only (not Dr. Lowther or Ms. Lowther individually). *See* ECF No. 166 at 42. The parties have not raised this issue. To the extent the Court is required to address this issue (and only to such extent), the Court grants summary judgment as to Count VI in favor of Defendants Maria Morales and Andrea Miles, based on qualified immunity, against all Plaintiffs, for the reasons stated herein.

Because there are no claims remaining against Defendant Maria Morales or Andrea Miles (*see* ECF No. 214 at 52 (granting summary judgment to Defendant Morales on Count V); ECF No. 266 at 4 (granting summary judgment to Defendant Morales on Count IV)), the Clerk is hereby **DIRECTED** to terminate Defendants Maria Morales and Andrea Miles as parties from the lawsuit.

A separate final judgment will be entered at a later date, if necessary.

**IT IS SO ORDERED.**

_____
**MARGARET STRICKLAND**
UNITED STATES DISTRICT JUDGE